691 A.2d 873

NICHOLAS VASTINO, PETITIONER–RESPONDENT, v. MAN-RO-
LAND, INC., AS INSURED BY ALLIANZ INSURANCE COMPA-
NY, RESPONDENT–APPELLANT, AND MAN-ROLAND INC. AS
INSURED BY NEW JERSEY MANUFACTURERS INSURANCE
COMPANY, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 19, 1997—Decided April 15, 1997.

Before Judges DREIER, D'ANNUNZIO [1] and VILLANUEVA.

*Anthony C. Famulari* argued the cause for appellant MAN–Roland, Inc., as insured by Allianz Insurance Company (*Carpenter, Bennett & Morrissey,* attorneys; *Mr. Famulari* of counsel; *Joel L. Botwick* on the brief).

*Francis T. Giuliano* argued the cause for respondent MAN–Roland Inc., as insured by New Jersey Manufacturers Insurance Company (*Mr. Giuliano,* attorney and on the brief).

*Lester S. Goldblatt* argued the cause for respondent *Nicholas Vastino* (*Mr. Goldblatt,* attorney and on the letter brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).

Allianz Insurance Company ("Allianz") appeals from a Workers' Compensation decision holding it solely responsible for the petitioner's twenty-five percent pulmonary disability suffered as a result of occupational exposure to irritants and foreign substances during his employment with MAN–Roland, Inc. from August 18, 1971 through October 16, 1992. We affirm.

Petitioner filed a claim petition on December 3, 1992 alleging pulmonary disability as a result of occupational exposure to pulmonary irritants and foreign substances during his employment with MAN–Roland, Inc. from August 18, 1971 through October 16, 1992.

Prior to July 1, 1992, MAN–Roland was covered under a policy of insurance issued by Allianz. As of July 1, 1992, New Jersey Manufacturers Insurance Company ("NJM") provided Workers'

---

[1] Judge D'Annunzio did not participate in the oral argument. However, the parties consented to his participation in the decision.

Compensation coverage to MAN–Roland. Accordingly, petitioner filed a second claim petition, naming NJM. The two claim petitions were consolidated for trial. The only issues before the court involved the nature and extent of permanent disability, if any, and a determination of the responsible insurance carrier, Allianz or NJM, if permanent disability was established.

As of June 30, 1992 MAN–Roland ceased all manufacturing operations. Within three working days of June 30, 1992, namely July 6, 1992, the petitioner was examined by Dr. Malcolm Hermele, who diagnosed the various lung illnesses the petitioner had which led to the award of compensation. Dr. Hermele not only diagnosed the actual conditions which afflicted petitioner, but also quantified the extent of petitioner's impairment at 50% of total disability. The July 4, 1992 holiday weekend intervened between June 30, 1992, the last day of Allianz's period of coverage, and July 6, 1992, the date of Dr. Hermele's examination.

Dr. Hermele's testimony made clear that there was no material contribution by the subsequent exposure between June 30 and the date of his examination. To the contrary, as the doctor said, the exposure "participated to a very, very minimal extent."

Furthermore, the minimal exposure petitioner faced during the period of NJM's coverage after July 1, 1992 was significantly reduced as compared to his prior exposure due to the fact that MAN–Roland's plant was no longer manufacturing product. Rather, its activities were confined to cleaning up the shop with the intention of closing it down.

After hearing all the evidence, Judge Bolstein found Dr. Hermele's testimony on behalf of petitioner to be more credible, and found petitioner's disability to be 25% of partial total. Moreover, Judge Bolstein found that petitioner's employment prior to July 1, 1992 solely caused the disability, and therefore imposed liability entirely upon Allianz. The court dismissed the claim petition against NJM.

For purposes of this appeal, the fact that the petitioner has a pulmonary disability compensable under the Workers' Compensation Law is conceded. The Judge of Compensation who tried this matter made the specific findings required by *N.J.S.A.* 34:15–31 and *N.J.S.A.* 34:15–36 and those findings are not challenged on this appeal.

## I.

Allianz contends that *Bond v. Rose Ribbon & Carbon Mfg. Co.,* 42 *N.J.* 308, 311, 200 *A.*2d 322 (1964), established a rule that in an occupational disease case where there is a succession of employments or insurance carriers, the last employer or carrier in line is automatically responsible for the petitioner's disability.

For an employer or workers' compensation insurance carrier to be held liable in a cumulative exposure case, there must be a causal relationship in fact between the exposure and the disease. That causal relationship must be established to a degree substantially greater than *de minimus.* *N.J.S.A.* 34:15–31.

■ The necessary prerequisite of imposition of liability on the "last" employer or workers' compensation insurance carrier in a succession of such employers or carriers is that there be actual causation or actual contribution to the petitioner's condition by the work exposure during such employment or period of coverage. The language of the *Bond* decision itself requires such causal relationship.

*Bond* established the principle that

where ... an employee is *exposed to work conditions which activate or cause* a progressive occupational disease, and the existence of such disease remains undisclosed and unknown over a period of time, [and] ... where such employee *continues to be exposed to work conditions which aggravate* the existing disease [and] ... *where the employment under such work conditions* was under the aegis of successive employers or insurance carriers, from initial infection of activation to discovery or manifestation ... the most workable rule and that most consistent with the philosophy and public policy of the Workmen's Compensation Act is to hold liable that employer or carrier during whose employment or coverage the disease was disclosed ... by medical examination, work incapacity, or manifest loss of physical function.

[42 *N.J.* at 311, 200 *A*.2d 322 (emphasis added) ].

Under *N.J.S.A.* 34:15–31, which governs occupational disease claims, causation must be established in a material degree, which is defined as "a degree substantially greater than *de minimus.*" See *N.J.S.A.* 34:15–7.2; *Fiore v. Consolidated Freightways*, 140 *N.J.* 452, 659 *A*.2d 436 (1995) (holding that the definition of "in a material degree" in *N.J.S.A.* 34:15–7.2 applies to *N.J.S.A.* 34:15–31).

■ Thus, in deciding the instant matter the Judge of Compensation correctly held that for liability to have been imposed on NJM, the exposure to petitioner during NJM's period of coverage had to be a material cause of petitioner's pulmonary disability. As indicated by the record, disability was quantified by Dr. Hermele on July 6, 1992, and did not change thereafter. For liability to have been imposed on NJM, the petitioner's exposure during the three days petitioner worked from July 1 to July 6, 1992 would have to have been a material cause of petitioner's pulmonary disability evaluated by Dr. Hermele on July 6, 1992. This legal requirement was not met in this case, and could not possibly have been met, given Dr. Hermele's testimony that the "exposure [in] those few days is *very, very minimal,* and participated in [petitioner's] condition to a *very, very minimal extent.*"

The Judge of Compensation accepted and credited Dr. Hermele's testimony, and rejected that of the physician called by the Allianz. Thus, there was no medical testimony anywhere in the record contradicting Dr. Hermele's medical conclusion that any exposure petitioner may have had on July 1, 2 and 3, 1992 was *de minimus.*

## II.

Allianz appears to argue that the decision in *Giagnacovo v. Beggs Bros.*, 64 *N.J.* 32, 311 *A*.2d 745 (1973), established a rule that "disability is apportionable to an employer when 'fixed, arrested and definitely measurable.'" *Id.* at 38, 311 *A*.2d 745. The argument proceeds that because Dr. Hermele could not "appor-

tion" petitioner's disability when Dr. Hermele saw the petitioner on July 6, 1992, then despite its three days of immaterial exposure, NJM should be solely responsible for the petitioner's disability.

Allianz correctly notes that *Bond v. Rose Ribbon & Carbon Mfg. Co., supra,* does not always require apportionment between two employers or carriers. In *Bond,* the Court stated that where

an employee is exposed to work conditions which *activate* or *cause* a progressive occupational disease, and the existence of such disease remains undisclosed and unknown over a period of time, it is impossible upon ultimate revelation of its existence by medical examination, work incapacity, or manifest loss of physical function, to pinpoint in retrospect, the triggering date of such activation or inception.

[*Id.* 42 *N.J.* at 311, 200 *A.*2d 322 (emphasis added).]

The rule implies that there need not be an apportionment in every case but only where there is causation and inability to apportion.

Accordingly, there must at least be a showing that the employer or insurer would be subject to an apportionment claim and that the exposure during the period of employment or insurance was not *de minimus, i.e.* that the exposure during this period materially added to the condition. If this were not so, there would be nothing to apportion and nothing upon which to apply the *Bond v. Rose Ribbon* rule. In this case there was no testimony that the increase in disability during the NJM coverage was material and, in fact, petitioner's expert states it was not.

Affirmed.